### GIBBONS ENGINEERING & MACHINE CO., Inc. v. UNITED STATES.

#### No. 1430.

United States District Court
D. Massachusetts.
June 9, 1949.

Rolnick & Asofsky, New York City, Bernard Rolnick, New York City, John E. Rogerson, Boston, Mass., for plaintiff.

George F. Garrity, United States Attorney, Boston, Mass., Edward O. Gourdin, Assistant United States Attorney, Boston, Mass., for the United States.

FORD, District Judge.

The libellant in this action, Gibbons Engineering & Machine Co., Inc., (hereinafter called Gibbons) seeks to recover from the United States money due on a contract for repairs to the vessel S.S. Kokomo Victory.

It is agreed by the parties that the S.S. Kokomo Victory was a vessel owned and operated by the United States through the War Shipping Administration, and with Luckenbach Steamship Co., Inc., as general agents under a standard service agreement. It is agreed that the refrigeration system in the No. 1 hold of the vessel was repaired in October and November of 1945 by the American Air Conditioning Company as a subcontractor of Gibbons, that the work was satisfactorily performed, that Gibbons has paid its subcontractor, that Gibbons itself has not been paid, and that the sum of $5,832.29 demanded by Gibbons is the fair and reasonable value of the work done and is the sum which should be recovered by libellant if it is entitled to recover anything from the United States. It is also agreed that at the time the work in question was performed libellant Gibbons had a standard master lump-sum contract with the War Shipping Administration for the repair of respondent's vessels at Boston, and that one John B. Care, a surveyor for the War Shipping Administration, was duly authorized to issue job orders for specific work to be performed under said contract.

From the testimony it appears that what occurred was this: on or about October 8, 1945 the S.S. Kokomo Victory arrived in Boston. This vessel was assigned for repairs at Boston to Gibbons. Mr. Care on behalf of the War Shipping Administration supervised all work by Gibbons on ships of the United States. Care orally directed Davidson, the superintendent of Gibbons, to make certain repairs to the vessel, including repairs to the refrigeration system which had recently been installed at New York by a subcontractor of the Wheeler Shipbuilding Corporation (hereinafter called Wheeler). This work on the refrigeration system was actually to be performed by the American Air Conditioning Company, a subcontractor of Gibbons, and Care also instructed Sullivan, the president of the subcontractor to proceed with the work. The work was begun at once on October 8, was carried on without interruption for five days, until the sailing of the vessel made it necessary to suspend work. The repairs were completed when the vessel again put in at Boston during the following month.

It had been contended that these refrigeration repairs were necessary because the system which had been installed in New York leaked gas and was defectively installed in other respects, so that it required extensive repairs to put it in proper working order. Shortly after the repairs had been undertaken, representatives of Wheeler and Wheeler's subcontractor appeared in Boston to dispute the need of these repairs. A conference to discuss this issue was held, attended by them, by Care, by Sullivan and one of his engineers, by Davidson, the superintendent of Gibbons, and by Johnson, the representative of the general agent the Luckenbach Steamship Company. Care also took the Wheeler representatives to the boat and conducted tests of the refrigeration system. The Wheeler representatives then agreed that their work had been defective, and stated

that any repairs were the responsibility of Wheeler. With this Care agreed, told them that the repairs had to be made immediately and also told them in the presence of Sullivan that the work was up to them from now on.

Another conference followed, attended by Wheeler's representatives, Sullivan, Johnson, and Mr. Gibbons, president of libellant. At the conclusion of this meeting one of the group delivered to Davidson a typewritten document, signed by one Markush on behalf of Wheeler, which was in form an authorization from Wheeler to Gibbons to make enumerated repairs to the refrigeration system of the S.S. Kokomo Victory.

Mr. Care was accustomed, in giving orders for repairs to be made by Gibbons and its subcontractors, to give these orally in the first instance, and within a few days to furnish the written job order required under the master lump-sum contract. Such job orders were given for all other work done by Gibbons on the S.S. Kokomo Victory on this occasion, but no job order as required by the lump-sum contract was ever given by Care for the refrigeration system repairs. Gibbons never requested such an order, nor did it request or receive for this work the usual completion certificate executed when the work was finished. Gibbons, recognizing Wheeler as its obligor, first sent the bill for this work to Wheeler, and later Hart, Gibbons' office manager, telephoned Wheeler in an unsuccessful attempt to persuade Wheeler to pay. It was only after this event and bankruptcy proceedings were instituted with respect to Wheeler that any request for payment was made to the United States.

Libellant's contention is that, having furnished repairs to the S.S. Kokomo Victory upon the order of Care, a person authorized by the owner, and having done this with the knowledge of the Luckenbach Steamship Company, the general agent of the owner, it would have had a maritime lien on the vessel if it had been privately owned, 46 U.S.C.A. § 971, and is, therefore, entitled to recover against the United States as owner under Section 2 of the Suits in Admiralty Act, 46 U.S.C.A. § 742. Respondent contends that the repairs were made, not upon the order of any agent of the United States, but upon the order of Wheeler, with whom alone Gibbons had a contractual relation.

It is not necessary to decide whether Gibbons' contention would be sound if the work had been completed solely on the basis of the original oral orders of Care, since I must conclude that in the light of the intervening events the government's contention must be upheld. Although the work had begun on the basis of an order from Care, as agent of respondents, I find that practically the whole work was done after the adoption of a new contractual arrangement whereby Gibbons agreed to do the work for Wheeler, which latter was responsible for seeing that the system which it had defectively installed was put in proper working order. Gibbons had full knowledge of the facts of the situation through the participation of its representatives in discussion as to the responsibility of Wheeler. I find that at the second of these conferences it was agreed that Gibbons should do the work on behalf of Wheeler, and that this agreement was embodied in the written authorization signed by Markush on behalf of Wheeler for Gibbons to proceed with the work. By Davidson's receipt of this document, libellant had full notice of the basis on which it was proceeding. Its failure to request the usual job order from Care, and its conduct in seeking payment in the first place from Wheeler alone, show that it had understood it was no longer working under the orders of Care, but of Wheeler, and that it had agreed to the arrangement by which it was to carry out the repairs on that basis.

Consequently, I find that the repairs to the refrigeration system of the S.S. Kokomo Victory were not performed under a contract between Gibbons and the United States, nor upon the orders of an agent of the United States, and that, therefore, libellant is not entitled to recover from the United States the cost of such repairs.

Judgment for respondent. No costs.